**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| Christopher R. Nowlin,<br><br>Plaintiff,<br><br>vs.<br><br>United States Postal Service (UPS) and Conspiracy as to Michael Hendricks Briggs-Preload Supervisor, Kent Logan Carpenter- Former Supervisor, Weston Deas-Supervisor, Barbarnas Sumpter-Central Manager, Cross Herbert, Jacob Dubose, William Jab Green, and Jamison Herring, in their official and individual capacities,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br>Jury Trial Requested |

INTRODUCTION

Plaintiff Christopher Nowlin, by and through his undersigned attorneys, asserts the following Causes of Action in violation of 42 U.S.C § 1981 Race Discrimination/Racial Hostile Work Environment. Plaintiff asserts claims of § 1981 Retaliation, Conspiracy, Breach of Contract, and Breach of Contract Accompanied by a Fraudulent Act, against the United States Postal Service (UPS), and Michael Hendricks Briggs-Preload Supervisor, Kent Logan Carpenter-Former Supervisor, Weston Deas-Supervisor, Barbarnas Sumpter-Central Manager, Cross Herbert, Jacob Dubose, William Jab Green, and Jamison Herring, in their official and individual capacities as to Conspiracy ("Defendants") based on the following allegations.

ADMINISTRATIVE CHARGE

Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this Action, as described below:

a) Plaintiff has exhausted all administrative remedies available to him through the Laborer's International Union of North America ("LIUNA").

JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000e (5), this being a proceeding to enforce rights and remedies secured under 42 U.S.C. Section 1981 and other Federal statutes. This Court also has pendant, ancillary, and supplementary jurisdiction over so much of this action as is based on state law.

2. Venue is proper in the Florence Division because the Causes of Action arose therein, the acts and practices complained of occurred there, and it is where Defendants do business and may be found.

PARTIES

3. The Plaintiff resides in Florence County, South Carolina within this Judicial District.

4. The Defendant UPS Customer Center in Florence, S.C. ("UPS") is in Florence, South Carolina, and is an organization conducting business and operations in the State of South Carolina. The Defendant is legally organized and exists under the Code of Laws of the State of Delaware.

FACTS

5. Plaintiff is a 51-year-old African American male who diligently worked for Defendant for four years beginning on July 8, 2019. Plaintiff diligently and tirelessly worked for Defendant as a

Pre-Loader beginning on August 16, 2019, to efficiently and safely load and unload packages from delivery vehicles.

6. Plaintiff always prided himself on being an exemplary employee and had never received any form of disciplinary action regarding his performance or interactions with co-workers, supervisor(s), or previous department heads within his three years of employment.

7. Beginning June 22, 2020, Plaintiff began to experience allegations that he was racially hostile to a fellow white female employee which prompted Plaintiff's transfer to his last position as a Pre-Loader. Their allegations were found to be invalid.

8. On or about November 2020, Plaintiff participated in a race discrimination investigation against UPS concerning another employee, Kendra Gregg, who was also African American and who was hit by a white female, Lisa Evans, which Defendants did not terminate.

9. Shortly some days thereafter, Plaintiff began to experience continuing hostility within the workplace from his Pre-Load Supervisor, Michael Hendricks Briggs, and his supervisor at the time, Kent Logan Carpenter. The forms of racial harassment Plaintiff experienced included but were not limited to name-calling, threats, harassment, and unequal treatment while in the workplace.

10. Plaintiff submitted multiple grievances spanning from early 2021 to late 2023 regarding the workplace race discrimination and racial harassment he faced to Local 71, an affiliate of the Laborer's International Union of North America (hereinafter "LIUNA"), a Union of Construction workers to no avail.

11. To Plaintiff's dismay, he continued to experience such racial harassment and racial discrimination for years. Defendant acted with total defiance and indifference to Plaintiff's concerns pertaining to his work environment.

12. Plaintiff's racial harassment persisted to the point that Plaintiff was forced to file a police report on December 8, 2022, with the Darlington County Police Department against his Pre-Load Supervisor Defendant Michael Hendricks Briggs for extreme threats within the workplace.

13. To Plaintiff's shock and dismay, on December 12, 2022, Plaintiff received a termination letter for insubordination and racial discrimination which was a complete fabrication created by the Defendants.

14. As a result of Defendant's complete disregard for Plaintiff's workplace concerns and fear of termination, Plaintiff on December 18, 2022, filed his first workplace racial discrimination complaint against UPS with the South Carolina Human Affairs Commission (hereinafter "SCHAC").

15. Shortly thereafter, on December 20, 2022, UPS held a local hearing for Plaintiff's termination which was presided over by Brooke Hungerford (Labor Manager for UPS) and Willie Ford (President of LIUNA Union). Defendants Briggs, Sumpter, and Deas were also in attendance.

16. Upon information and review during the said hearing, Plaintiff learned that some of his co-workers, primarily white males, alleged that Plaintiff made racist remarks and racially discriminated within the workplace. The Plaintiff completely denies these allegations.

17. During this hearing, Plaintiff also requested to have a separate hearing with a higher authority due to Defendant's unrelenting motive to deny Plaintiff a chance to speak on his behalf. No action was taken by Defendant UPS regarding these allegations as the truth and surprisingly Plaintiff was allowed to return to work.

18. On December 27, 2022, Plaintiff returned to work for UPS but sadly continued to experience hostility, disparate treatment, and racially discriminatory practices. It was during this time that Plaintiff witnessed one of his similarly situated Caucasian male co-workers, Jacob Hudson,

being charged with multiple counts of insubordination but Hudson was able to return to work the next day with no hearing being required.

19. On February 1, 2023, Plaintiff requested a full investigation into the cause of his temporary termination. The Plaintiff specifically made this request to Brooke Hungerford (Labor Manager for UPS).

20. Meanwhile in retaliation, Plaintiff was continuously being transferred from workstation to workstation by Defendant Michael Hendricks Briggs and experienced extreme hostility from his fellow Caucasian colleagues, Defendants Cross Herbert, Jacob Dubose, William Jab Green, and Jamison Herring, who had previously accused him of workplace discrimination. These named Defendants conspired to get rid of Plaintiff as they were directly named in Plaintiff's grievance.

21. On September 11, 2023, Plaintiff was forced to file a second workplace racial discrimination complaint against UPS with SCHAC regarding why he had a hearing and was racially discriminated against while Jacob Hudson was treated favorably with no decision made to date.

22. Shockingly, on October 18, 2023, Plaintiff received a message from UPS, stating that Plaintiff was not to report back to work the next day as he was terminated from his job immediately.

23. On October 23, 2023, Plaintiff was wrongfully discharged from UPS by an authoritative panel and his current Supervisor Weston Deas, at the direction and guidance of Central Manager Barbarnas Sumpter, stating that Plaintiff was discharged for allegedly misloading packages and for race discrimination, claims not mentioned in the grievance hearings. Plaintiff was never questioned nor informed about this allegation making it a complete shock to Plaintiff when such allegations were the basis for his termination.

24. Plaintiff later discovered that the fraudulent allegation that caused Plaintiff's termination was made by his fellow Caucasian colleagues Defendants Cross Herbert, Jacob Dubose, William Jab Green, Jamison Herring, and his former Supervisor Kent Logan Carpenter.

25. Plaintiff was again forced to file a third charge of workplace racial discrimination with SCHAC on October 10, 2023, for Defendant's blatant disregard for Plaintiff's workplace concerns and unlawful termination. No decision was made regarding the investigation by SCHAC. And a charge was requested on November 19, 2024.

26. Plaintiff has subsequently been barred from working with UPS and denies any allegations made in connection with his termination.

27. The Plaintiff never received any Right to Sue Notice from the South Carolina Human Affairs Commission ("SCHAC") and now elects to proceed under Section 1981 for his legal redress by the Court.

FIRST CAUSE OF ACTION

*Race Discrimination and Hostile Work Environment in Violation of 42 U.S.C. § 1981 against Defendant UPS*

28. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

29. The Plaintiff is a member of a protected class on the basis of his race which is African American. Plaintiff was subjected to disparate treatment and a hostile work environment on the basis of his race due to Defendant and Defendant's agent's racially hostile treatment towards him in violation of 42 U.S.C § 1981.

30. Defendant, by and through their agents, began a pattern and practice of targeting Plaintiff through false accusations concerning insubordination and had a complete disregard for

his numerous complaints of racial discrimination and a hostile work environment. Plaintiff's similarly situated Caucasian colleagues were not subjected to such treatment and scrutiny, and Defendant made no efforts to protect Plaintiff from harassment from Defendants Michael Hendricks Briggs and Kent Logan Carpenter.

31. Plaintiff was further subjected to unwanted hostility and threats imposed by Defendants Michael Hendricks Briggs and Kent Logan Carpenter.

32. Plaintiff alleges that this racially hostile treatment on the job was pretextual, as Plaintiff was wrongfully terminated for unfounded and undisclosed allegations to force his discharge from UPS. Plaintiff alleges that Defendant, through their agents, initiated racially discriminatory and hostile practices against Plaintiff which were reckless, wanton, and intentional race discrimination.

33. By knowingly allowing a workplace full of such racial hostility to exist which was so objectively and subjectively severe and pervasive, Defendant's agents created a racially hostile work environment that injured Plaintiff considerably.

34. In failing to protect Plaintiff from racial discrimination or retaliation, Defendant and their agents acted with malice and reckless indifference to the federally protected rights set out under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et. seq.), the South Carolina Human Affairs Law and the United States Equal Employment Opportunity Laws.

35. Plaintiff alleges that Defendant, through their agents, initiated racially discriminatory practices against Plaintiff such as placing Plaintiff on a temporary termination, making fraudulent statements concerning Plaintiff's work performance, and disparately treating Plaintiff differently than his similarly situated Caucasian colleagues based on his race.

36. As a result of Defendant's race discrimination and Plaintiff's exposure to a racially hostile work environment created by Defendant, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages should be levied against Defendant due to their unlawful treatment of Plaintiff.

SECOND CAUSE OF ACTION

*Retaliation in Violation of 42 U.S.C. §1981 as to Defendant UPS*

37. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

38. The Plaintiff is a member of a protected class on the basis of his race (African American). Plaintiff was subjected to retaliation on the basis of his race due to Defendant and Defendant's agents racially and disparately treating Plaintiff after he participated in a discrimination investigation against UPS concerning another employee who was physically assaulted by a Caucasian woman and who was also African American.

39. Plaintiff was repeatedly subjected to and protested the violations of his federally protected rights within the Defendant's administrative structure all to no avail as such grievances merely subjected Plaintiff to being mistreated in a retaliatory manner and to a continuance of unlawful racial harassment and retaliation as stated above.

40. Plaintiff repeatedly objected to and protested the violations of his federally protected rights with the Defendant's administrative structure.

41. After Plaintiff sought to seek relief from Defendant's racially discriminatory practices, including but not limited to, consulting upper management and exhausting other state

remedies, Defendant's agents continued to retaliate against Plaintiff through harassment, increased racial discriminatory mistreatment, and by not addressing his complaints.

42. After Plaintiff informed Defendant of the racial discrimination and mistreatment that Plaintiff was exposed to, Defendant's agents retaliated against Plaintiff by initiating a continuing pattern of animus, pretextual performance hearings, and the pretextual termination of Plaintiff to include:

- Terminating Plaintiff because of his race, in retaliation for Plaintiff participating in a discrimination investigation against UPS,

- Questioning the discriminatory practices of Defendant thereafter and reporting the racially hostile work environment Plaintiff was subjected to.

43. Due to the retaliatory acts of Defendant, their agents, and employees, Plaintiff is entitled to injunctive relief and/or civil damages, back wages, plus interest, payment for lost wages, and punitive damages.

44. Accordingly, Plaintiff is entitled to compensatory and punitive damages as a result thereof as Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages should be levied against Defendant on account of its unlawful treatment of Plaintiff.

THIRD CAUSE OF ACTION

*Civil Conspiracy as to the Defendants Michael Hendricks Briggs-Pre-Load Supervisor, Kent Logan Carpenter- Former Supervisor, Weston Deas-Supervisor, Barbarnas Sumpter-Central Manager, Cross Herbert, Jacob Dubose, William Jab Green, and Jamison Herring*

45. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

46. Between December 2020 and October 23, 2023, Defendants planned and conspired with each other to force Plaintiff's termination by pretextually placing Plaintiff on temporary termination through fraudulent statements and pretextual hearings with no due process or investigation into the matter.

47. The Defendants conspired with one another to paint Plaintiff in a negative light to force his untimely termination and discharge from UPS.

48. The Defendants were aware of Plaintiff's complaints and grievances against the hostile and racially discriminatory work environment he was subjected to, but Defendants deliberately ignored Plaintiff's complaints to force his termination.

49. Defendants Herbert, Dubose, Green, and Herring conspired amongst each other to make fraudulent statements and reports concerning Plaintiff's work performance such as insubordination and misloading of packages while creating an unwelcoming and hostile work environment to compel Plaintiff's termination from UPS.

50. The Defendants Michael Hendricks Briggs, Kent Logan Carpenter, Weston Deas, and Barbarnas Sumpter exceeded the scope of their employment by abusing their supervisory and managerial capacities to cause embarrassment, anxiety, and emotional distress to Plaintiff, which was foreseeable and preventable had Defendant, UPS, adequately supervised the Defendants.

51. Defendants Weston Deas and Barbarnas Sumpter deliberately ignored Plaintiff's multiple grievances and complaints in a combined effort with the other Defendants to force Plaintiff's termination against his will.

52. The natural consequence of the Defendants' combined actions caused special damages to Plaintiff apart from any other damages placed herein. Specifically, the acts in the furtherance of this conspiracy, as alleged, have and will continue to cause Plaintiff special damages for pecuniary losses, embarrassment, humiliation, anxiety, depression, pain and suffering, mental anguish, loss of enjoyment of life, and further non-pecuniary losses.

53. Accordingly, due to the acts of Defendant and its agents, Plaintiff is entitled to injunctive relief and civil damages from the Defendants.

## FOURTH CAUSE OF ACTION

*Breach of Contract as to Defendant UPS*

54. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

55. Plaintiff and Defendant entered into a binding and valid contract whereby Defendant offered Plaintiff employment. Plaintiff accepted the offer of employment and agreed to fulfill the duties of his position as a Pre-Loader in exchange for valuable consideration, his salary, and Defendant's guarantee that he would be protected from race discrimination and retaliation.

56. Defendant maintains an employment handbook and its mandatory policies and procedures.

57. Plaintiff continuously and diligently worked for Defendant for four years and had the desire to continue working for Defendant in the future.

58. At all times during his employment, Plaintiff relied on the promises contained in Defendant's handbook, policies and procedures, and governing documents.

59. Defendant breached its employment contract with Plaintiff and its policies and procedures between December 2020 and October 23, 2023, by failing to protect Plaintiff from intimidation and threats, leading to Plaintiff's race discrimination.

60. Defendant failed to consider Plaintiff's grievances and complaints. Instead, Defendants retaliated against Plaintiff by placing Plaintiff on a temporary termination without an investigation and made fraudulent statements concerning Plaintiff's work performance.

61. Defendant's adverse actions created undue stress and a racially hostile work environment based upon Plaintiff's race.

62. Defendant has unjustifiably failed to perform the employment contract with Plaintiff by terminating Plaintiff's job without a proper investigation or just reasoning and by making fraudulent statements about Plaintiff's job performance.

63. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered from anxiety, depression, humiliation, embarrassment, and low self-esteem.

64. Therefore, Plaintiff is entitled to injunctive relief and/or civil damages.

## FIFTH CAUSE OF ACTION

*Breach of Contract Accompanied with Fraudulent Intent as to Defendant UPS*

65. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

66. Defendant, by and through their agents, have breached the terms thereof by reason of an intentional design on its part to defraud Plaintiff.

67. In furtherance of such intentional design, Defendant, through their agents, intentionally and maliciously placed Plaintiff in a position of being subjected to extreme racial harassment and disparate treatment under the guise of informal hearings concerning

Plaintiff's job performance. Through Plaintiff's contract with Defendant, Defendant ensured that Plaintiff would not be subjected to racially disparate treatment, harassment, and other policy violations which Defendant continuously meted out to Plaintiff.

68. It became readily apparent to Plaintiff that Defendant's reassurances and their consistent fraudulent statements concerning Plaintiff's job performance were done as a pretext to terminate Plaintiff's job while violating their own policies.

69. The Defendant's conduct, by and through their agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

70. As a result of Defendant's race discrimination and exposure of Plaintiff to Defendant's fraudulent breaches of contract, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages should be levied against Defendant on account of their unlawful treatment of Plaintiff and fraudulent contractual breaches.

## PRAYER FOR RELIEF

**Wherefore**, the Plaintiffs pray for the following:

1. That Plaintiffs are granted all their claims.
2. That Plaintiff is granted severance, lost wages, and back pay.
3. That Defendants are denied all counterclaims and defenses.
4. For Attorney's fees and cost to prosecute this action
5. For a Jury Trial.
6. For actual, special, consequential, and punitive damages.

7. For such and other awards as this Honorable Court deems just and proper.

Respectfully Submitted,

s/Donald Gist_____
Donald Gist (13098)
GIST LAW FIRM, P.A. 4400 North Main Street
Columbia, South Carolina 29203
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com

Attorney for Plaintiff

July 17, 2024